IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN KAPUA,

            Plaintiff,

    v.

UNITED STATES,

            Defendant.

Case No.: 3:24-cv-00357-AN

OPINION AND ORDER

Plaintiff John Kapua brings this negligence action against defendant United States. Defendant moved to dismiss plaintiff's action for lack of subject matter jurisdiction. For the reasons stated herein, defendant's Motion to Dismiss for Lack of Jurisdiction, ECF [8], is GRANTED.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss for lack of jurisdiction may be a facial or factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A factual attack involves a dispute as to the completeness or the truth of the facts underlying the complaint that would, by themselves, otherwise invoke federal jurisdiction. *See id.* When a jurisdictional motion "involve[es] factual issues which also go to the merits," a court "should employ the standard applicable to a motion for summary judgment [because] resolution of [those] jurisdictional facts is akin to a decision on the merits." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). In other words, a court interpreting a factual attack may rely on evidence outside the complaint and resolve factual disputes. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Safe Air for Everyone*, 373 F.3d at 1039 (citation omitted). In that posture, "the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077.

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases omitted). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

The following facts are not in dispute. Around noon on or about March 1, 2022, plaintiff was riding his bicycle in Beaverton, Oregon. Compl., ECF [1], ¶ 9. As plaintiff crossed a private driveway that provides street access to United States Postal Service ("USPS") vehicles, USPS employee Randal Malcomson struck plaintiff with a USPS vehicle that Malcomson was driving out of the driveway and onto the street. *Id.* ¶¶ 9-10. Plaintiff sustained a variety of physical injuries for which he has undergone "extensive and ongoing medical treatment" and seeks $25,000.00 in economic damages. *Id.* ¶¶ 10, 15-16. Plaintiff also alleges "pain, discomfort, impairment, inconvenience, stress, and interference with his normal

and usual activities," for which he seeks $50,000.00 in non-economic damages. *Id.* ¶ 17.

After the incident, plaintiff filed an administrative tort claim wherein he sought compensation for (1) property damages to his bicycle, helmet, and shirt, totaling $675.42; and (2) personal injury, including medical expenses, totaling $30,916.80. Def. Mot. to Dismiss ("Def. Mot."), ECF [8], at 3; *see* Compl. ¶ 6. Then, by letter dated March 30, 2022, plaintiff's counsel "requested payment for the property-damage portion of the claim, acknowledging that the personal-injury portion remained outstanding." Def. Mot. 3 (citing Decl. Stanford M. Bjurstrom Supp. Def. Mot. to Dismiss ("Bjurstrom Decl."), ECF [9], Attach. at 1); *see* Pl. Resp. Def. Mot. to Dismiss ("Pl. Resp."), ECF [10], at 5-6. In the letter, plaintiff's counsel wrote in relevant part: "Although [plaintiff] does intend to pursue a claim for injuries sustained as a result of being knocked down from his bicycle, we would like to resolve the property damage portion of the claim right away." Def. Mot. 3-4 (quoting Bjurstrom Decl. ¶ 3); *see* Pl. Resp. 5-6. In response to the letter, USPS sent plaintiff a check for $675.42, the amount requested for property damage. Def. Mot. 4; Pl. Resp. 6. The cover letter enclosing the check was signed by USPS Tort Claims Investigations Office employee Robin Caruthers and advised plaintiff:

> "Enclosed please find a check in the amount of $675.42 made payable to you in full and final settlement of the above referenced administrative claim for property damage.
>
> Acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the United States Postal Service and/or government employee(s) whose act(s) or omission(s) gave rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or any outstanding indebtedness, resulting from this incident must be satisfied from the proceeds of this check."

Def. Mot. 4; Bjurstrom Decl., Attach. at 2. Plaintiff accepted the check. Def. Mot. 4; *see* Pl. Resp. 2.

USPS sent plaintiff letters dated March 15, 2023, and October 6, 2023, regarding plaintiff's personal injury claim. Decl. Douglas F. Angell Supp. Pl. Resp. Def. Mot. to Dismiss ("Angell Decl."), ECF [11], Attachs. 1-2; *see* Pl. Resp. 2. Caruthers signed the March 15 letter and was named in the October 6 letter. *See* Angell Decl., Attachs. 1-2. The letters in essence indicated that plaintiff needed to submit a properly completed Standard Form 95 ("SF 95") for his claim to be considered. *See id.* Through a SF 95 dated October 24, 2023, plaintiff's counsel sought from USPS an additional $30,916.00 for personal injury

3

damages. Mot. 4; Bjurstrom Decl., Attach. at 4. By letter dated February 21, 2024, USPS refused plaintiff's demand and stated in relevant part:

> "We regret that additional expenses were incurred as a result of this incident. However, the release letter, which accompanied our previous payment, indicated that acceptance of the check acts as a complete release and bars any additional or future claims against the [USPS]."

Mot. 4; Bjurstrom Decl., Attach. at 6.

Plaintiff filed the present action on February 27, 2024, alleging a single claim of negligence under the Federal Tort Claims Act ("FTCA"). Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) and that he has complied with FTCA procedure by delivering a Tort Claim Notice pursuant to 39 U.S.C. § 409(c); filing an administrative claim pursuant to 28 U.S.C. § 2671 *et seq.*; and presenting to USPS a completed SF 95, Claim for Damage or Injury, and supporting documentation. Compl. ¶¶ 6-8. Defendant filed the instant motion to dismiss on May 20, 2024.

## DISCUSSION

### A.    Claim Splitting Under the FTCA

Where Congress has declined to waive the sovereign immunity of the United States from a claim, a court lacks jurisdiction to adjudicate that claim. *United States v. Sherwood*, 312 U.S. 584, 586-87 (1941). Courts must strictly construe waivers of sovereign immunity. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 94 (1990).

Congress enacted the FTCA "primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 568 U.S. 503, 506 (2013) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)) (internal quotation marks omitted). The FTCA provides that the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. Put simply, "[t]he FTCA waives the government's sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of their employment." *Ortega Aranda v. U.S. Forest Serv.*, No. 3:17-cv-02041-PK, 2018 WL 6072026, at *2 (D. Or. Sept. 4, 2018) (quoting *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008)) (internal

quotation marks omitted), *report and recommendation adopted*, 2018 WL 6070338 (D. Or. Nov. 19, 2018). "To determine liability under the FTCA, the court looks to the tort law of the state where the claim arose." *Id.* (citing 28 U.S.C. §§ 1346(b), 2672).

However, there are limits to the scope of Congress's waiver of sovereign immunity via the FTCA. *See, e.g.*, *Levin*, 568 U.S. at 506-07 (describing the intentional tort exception); *Nieves Martinez v. United States*, 997 F.3d 867, 875-76 (9th Cir. 2021) (describing the discretionary function exception); *Feres v. United States*, 340 U.S. 135, 143-44 (1950) (describing the exception for injuries that arise "incident to [military] service"). One such limitation, set forth in 28 U.S.C. § 2672, describes the effect of a claimant's acceptance of a settlement on that claimant's FTCA claim or claims:

> "The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter."

The scope and effect of section 2672 is central to the parties' dispute in this case.

The Third Circuit analyzed section 2672 as applied to a similar set of facts in *Macy v. United States*, 557 F.2d 391 (3d Cir. 1977). In *Macy*, the plaintiff was injured when a mail truck struck her car. *Id.* at 392. The plaintiff submitted a SF 95 that contained instructions stating: "If claimant intends to file claim for both personal injury and property damages, claim for both must be shown on line 10 of this form. Separate claims for personal injury and property damages are not acceptable." *Id.* Above the signature line, the form included language stating: "I certify that the amount of claim covers only damages and injuries caused by the accident and agree to accept said amount in full satisfaction and final settlement of this claim." *Id.* The plaintiff entered an amount for property damage but not for personal injury, and then struck out the language above the signature line and added the phrase "if it covers the damages." *Id.* After deeming the amount of the plaintiff's claimed property damage to be incorrect, the USPS rejected the SF 95 and sent the plaintiff a letter wherein it offered her a slightly lower amount. *Id.* The plaintiff accepted the offer of the lower amount with a written statement that read in relevant part: "I agree to accept payment from you in the amount of $550.10, to be used to repair my vehicle resulting from the collision[.]" *Id.* at

392-93. Rather than asking the plaintiff to complete a new SF 95, the USPS sent a check to the plaintiff with a letter that stated in relevant part: "A settlement check in the amount of $550.10 is enclosed. Acceptance of the above amount operates as a complete release of any claim . . . by reason of the same subject matter. This payment represents the full amount of your claim." *Id.* at 393. The plaintiff responded:

> "This is to acknowledge receipt of your postal service check in the amount of $550.10, which I am using for payment of repairs to my vehicle resulting from an accident with one of your postal trucks.
>
> I wish to advise at this time that the amount does not cover my medical expenses resulting from injury from that accident. I am undergoing medical treatment now and will advise you as to the extent of my injuries and cost at a later date, when they are known to me."

*Id.* The plaintiff then cashed the check and later filed a personal injury suit. *Id.* The United States moved for summary judgment, which the district court granted upon finding that the parties' communications constituted a binding release under section 2672. *Id.* at 392. The plaintiff appealed.

The Third Circuit vacated the judgment and remanded, concluding that the parties' correspondence and actions did not create a binding contractual obligation upon the plaintiff to release all future claims. *Id.* at 394-95. The court noted that a release is contractual in nature, and that to find the existence of a binding release there must be (1) an offer "to relinquish or concede a right, claim or privilege[,]" and (2) an acceptance of that offer. *Id.* at 394. The court reasoned that the plaintiff "specifically couched her response with express conditions not contained in the offer[,]" and that "[a]t best, [the plaintiff's] response was a counter-offer to release on property damages only, to-wit, she was accepting the $550.10 as payment in full of property damages to her car. There was no acceptance of the government's offer, no meeting of the minds. There was no contract to release." *Id.* The court concluded by applying section 2672 and explaining:

> "Section 2672 does not provide that acceptance of payment of cash or a government check operates as a 'complete release.' In order to constitute a 'complete release of any claim,' Congress specifically provided that the acceptance be (1) an award, (2) a compromise, or (3) a settlement.
>
> The Postal Service's letter . . . was an attempt to create a contractual release, not precisely authorized by the statute, to-wit, an offer that acceptance of a check would operate 'as a complete release.' Since § 2762 does not provide that acceptance of a check operates as a release, the government must rely on common law contract principles. The offeree, [the

plaintiff], responded with a counter-offer, and cashed the check.    Under these circumstances neither a contractual nor a statutory release was entered into by [the plaintiff].

To qualify as a release under the statute, there had to be a compromise or settlement reached by a meeting of the minds.  We find none."

*Id.* Thus, the court held that the plaintiff's personal injury claim was not barred by section 2672.  *Id.*

Fifteen years after *Macy*, in *Schwarder v. United States*, the Ninth Circuit considered "to what extent Congress intended to make the effect of a section 2672 settlement dependent upon state law." 974 F.2d 1118, 1123 (9th Cir. 1992).  The *Schwarder* court "conclude[d], as a matter of federal law, that an administrative settlement reached pursuant to section 2762 bars further claims by the settling party, without regard to the effect it would have as a matter of state law." *Id.* at 1124.  The Ninth Circuit explicitly distinguished settlements reached pursuant to section 2672 from pre-injury releases not specifically covered by any federal statute.  *Id.* at 1123-24 (citing *Montellier v. United States*, 315 F.2d 180, 185 (2d Cir. 1963) (looking to state law to determine effect of pre-injury release on wrongful death action); *Air Transp. Assocs. v. United States*, 221 F.2d 467, 471 (9th Cir. 1955) (stating in context of pre-injury release that the FTCA adopts state law to determine liability)).  Quoting section 2672, the Ninth Circuit reasoned that "*any* agreement between the United States and the injured party would be a relevant circumstance which would bar suit to the extent provided by state law." *Id.* at 1124 (emphasis in original).  Finally, the court clarified "that state law governs the question of the effect of a section 2672 release on claims of persons other than the settling claimant." *Id.*; *see Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75-76 (3d Cir. 1996) (turning to state law to determine whether parents could accept a section 2672 settlement on behalf of a minor claimant).

Two years after deciding *Schwarder*, the Ninth Circuit decided *Domingo v. Allen*, 28 F.3d 105 (Table), 1994 WL 259384 (9th Cir. 1994).[1]  In *Domingo*, the plaintiff accepted payment from the USPS to settle his claim for property damage.  *Id.* at *1.  The plaintiff did not contest evidence set forth by the defendant "that . . . [the plaintiff was advised] that in accepting payment of the claim he was waiving future

---

[1] *Domingo* is an unpublished pre-2007 decision that is technically uncitable under Circuit Rule 36-3, however, this Court considers *Domingo* to be instructive and persuasive authority considering its factual similarities to this case and the lack of applicable Ninth Circuit authority.

claims for damage or injuries resulting from the collision, that [the plaintiff] agreed, and that he instructed the [USPS] to pay his claim." *Id.* The plaintiff cited to *Macy*, arguing that "his acceptance of a payment for property damage . . . did not constitute a waiver of later claims" and that "he did not knowingly and voluntarily waive his right to file a later claim for personal injuries[.]" *Id.* The court disagreed, distinguishing *Macy* by reasoning that unlike the plaintiff in that case, who "crossed out the waiver language on the [SF] 95 [and] accepted and cashed a check from the United States only after sending the [USPS] a letter stating she was accepting the check for property damage only[,]" the plaintiff in *Domingo* "was advised that acceptance of payment would preclude future claims" and then agreed and cashed the check. *Id.* The court therefore concluded that the plaintiff's personal injury claim was barred. *Id.*

Other districts have consistently barred similar claims. *See Ziler v. United States*, No. 6:21-cv-01697, 2022 WL 2390045, at *4-5 (W.D. La. July 1, 2022) (emphasis in original) (dismissing personal injury claim where the plaintiff accepted a check for property damage notwithstanding the plaintiff's argument that a USPS employee confirmed that the plaintiff should submit his claims on two separate SF 95s, in part because "[the plaintiff's] *subjective* belief that he was only settling his property damage claim is irrelevant."); *Laguer v. United States*, 257 F. Supp. 3d 198, 206 (D.P.R. June 22, 2017) (citation omitted) (barring personal injury claim after the plaintiff accepted check for property damage because the plaintiff's "subjective intentions regarding the settlement are irrelevant. . . . [especially where] every document [he] signed in order to settle the property claim expressed clearly that by accepting the settlement he relinquished the right to bring future claims."); *Penn v. United States*, No. 4:10CV1145 SWW, 2012 WL 3555302, at *1-2, 5 (E.D. Ark. Aug. 16, 2012) (granting summary judgment against personal injury claim where the plaintiff accepted payment for property damage notwithstanding the plaintiff's allegation that the defendant's employees had indicated that the plaintiff would be able to file a second claim for personal injury); *Murphree v. United States*, No. 10-4122-WEB, 2011 WL 1980371, at *1, 7 (D. Kan. May 20, 2011) (dismissing personal injury claim brought after the plaintiff filed a SF 95 wherein she disclosed personal injuries of "bruising of ribs neck and back strain" but included no dollar amount and then accepted a check for property damage); *Wright v. United States*, 427 F. Supp. 726, 727-29 (D. Del. 1977) (barring subsequent

claim for pain and suffering where the plaintiff submitted an initial SF 95 that "assert[ed] a claim of undetermined amount for personal injuries," upon direction submitted an amended SF 95 that asserted a sum certain for personal injury damages, and then accepted a check for a negotiated amount, before bringing an additional suit for pain and suffering damages only); *Arnold v. United States*, No. 1:21-cv-399-WJ-JFR, 2022 WL 7008294, at *1, 3 (D.N.M. Oct. 12, 2022) (dismissing personal injury claim where the plaintiff submitted an SF 95, accepted the check sent in response from the USPS and retained the check for more than two years, and then sought to amend her administrative claim).[2]

## B.    This Court Lacks Subject Matter Jurisdiction

As noted above, the plain language of section 2672 and pertinent case law provides that acceptance "of *any* award, compromise, or settlement . . . shall constitute a complete release of *any* claim . . . by reason of the same subject matter." 28 U.S.C. § 2672 (emphases added); *see Schwarder*, 974 F.2d at 1124 ("[A]s a matter of federal law, . . . an administrative settlement reached pursuant to § 2672 bars further claims by the settling party, without regard to the effect it would have as a matter of state law."). Thus, the determinative question here is whether the facts of this case evidence that plaintiff accepted an award, compromise, or settlement. The answer is yes.

Plaintiff filed his initial administrative claim pursuant to section 2672 and sought compensation for both property and personal injury damages. Plaintiff's counsel's letter presented plaintiff's offer to USPS by requesting prompt payment of the property damage amount and attempting to reserve the personal injury claim. USPS then counteroffered by sending plaintiff a check for the property damage amount, together with a letter that indicated that plaintiff's acceptance of the check for the property damage amount would operate "as a complete release" and would bar "recovery of any additional or future

---

[2] *But see Bunker v. United States*, No. 1:12-cv-1742-CL, 2013 WL 5524688, at *1, 3 (D. Or. Oct. 3, 2013). In *Bunker*, this Court declined to find that a claimant's acceptance of a check for property damage barred a subsequent personal injury claim asserted by the claimant's wife. However, the Court notes that *Bunker* is materially distinguishable in that the *Bunker* court considered the effect of an injured party's acceptance of a settlement on a subsequent claim by a *non-settling claimant*, as opposed to the effect of such a settlement on a subsequent claim by the *injured party*. *See Schwarder*, 974 F.2d at 1123 (emphasis added) ("[S]tate law governs the question of the effect of a section 2672 release on claims of persons *other than the settling claimant*.").

claims . . . by reason of the same subject matter." Def. Mot. 4; Bjurstrom Decl., Attach. at 2. Plaintiff then retained the check, thereby accepting USPS's counteroffer. Under these facts, the parties reached an administrative settlement pursuant to section 2672 that constituted a complete release of any claim based on the same subject matter. *See Macy*, 557 F.2d at 394 (noting that a binding release exists where there has been (1) an offer "to relinquish or concede a right, claim or privilege[,]" and (2) an acceptance of that offer).

  *Macy* does not beg a different result. In contrast to the plaintiff in *Macy*, who accepted the USPS's counteroffer via a writing in which she reiterated that her acceptance pertained only to the property damage amount, plaintiff in this case did not couch his acceptance of the USPS's counteroffer with express conditions not contained therein. In fact, plaintiff did not respond to the USPS's letter at all, and therefore cannot possibly be said to have responded with a "counter-offer to release on property damages only." *Id.* Here, plaintiff simply accepted the check by retaining it.

  The facts of this case are more akin to the facts of *Domingo*, where the plaintiff "was advised that acceptance of payment would preclude future claims" and then cashed the check. 1994 WL 259384, at *1. Plaintiff argues that *Domingo* is materially distinguishable because the plaintiff in that case "apparently acknowledged on at least two different occasions that he understood that the payment he received fully resolved all claims[,]" Pl. Resp. 3, whereas plaintiff here continued to interact with USPS and Caruthers regarding the personal injury claim, thereby indicating that the parties understood the personal injury claim to survive the property damage payment. This argument is unavailing. First, plaintiff relies solely on USPS's March 15, 2023, and October 6, 2023, letters to argue that "USPS knew that the injury claim remained viable and conducted itself as such." Pl. Resp. 6. But those letters merely convey that USPS would not consider plaintiff's personal injury claim at all until it was properly submitted. The letters were not acknowledgements by USPS that plaintiff in fact held a viable personal injury claim, but rather, requests for further information so that USPS could adequately make that assessment. Upon proper submission, USPS determined that plaintiff did not hold a viable claim. Second, plaintiff's argument is, in essence, a reiteration of the "subjective intent" argument that has been repeatedly rejected by other courts. *See Ziler*, 2022 WL 2390045, at *5 (emphasis in original) (reasoning that "[the plaintiff's] *subjective* belief

that he was only settling his property damage claim is irrelevant."); *Laguer*, 257 F. Supp. 3d at 206 (holding that a plaintiff's "subjective intentions regarding the settlement are irrelevant."); *Wright*, 427 F. Supp. at 729 (upholding release despite evidence that the plaintiffs potentially "misunderstood the legal ramifications of accepting a settlement award . . . or . . . understood the legal consequences but nevertheless did not 'intend' to surrender the [other] claims"); *Penn*, 2012 WL 3555302, at *5 (barring subsequent personal injury claim despite the plaintiff's allegation that an employee in the defendant's office had "told [the plaintiff] that she would be allowed to bring an additional claim."). This Court agrees with the weight of persuasive authority.

## CONCLUSION

For the reasons stated, defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF [8], is GRANTED. Plaintiff's claims against defendant are DISMISSED without prejudice for lack of jurisdiction. *See Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017) (citation omitted) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice[.]").

IT IS SO ORDERED.

DATED this 19th day of November, 2024.

Adrienne Nelson
United States District Judge